**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teresa Wade,<br><br>    Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CV-12-0186-PHX-DGC<br><br>**ORDER** |

  Plaintiff Teresa Wade applied for disability insurance benefits and supplemental security income in August 2007 (Tr. 197-206), claiming to have been disabled since November 5, 2003 (*id.* at 207). The applications were denied initially on February 1, 2008, (Tr. 138-139, 142-49), and upon reconsideration on September 18, 2008 (Tr. 140-141, 151-57). A hearing before an Administrative Law Judge ("ALJ") was held on June 21, 2010. Tr. 78. The ALJ issued a written decision on October 8, 2010, finding that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 43-67. The ALJ's decision became Defendant's final decision when the Appeals Council denied review. Tr. 1-12. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1. The Parties have not requested oral argument. For reasons that follow, the Court will affirm Defendant's decision.

**I. Standard of Review.**

  Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). The Court cannot affirm the decision "simply by isolating a specific quantum of supporting evidence." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *see Robbins*, 466 F.3d at 882.

## II.   Analysis.

Whether a claimant is disabled is determined using a five-step sequential evaluation process. The claimant bears the burden in steps one through four. To establish disability the claimant must show (1) she is not currently working, (2) she has a severe medically determinable physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes him from performing her past work.[1] At step five, the Commissioner bears the burden of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(i)-(iv); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines[.]" *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)).

Plaintiff has not worked since the alleged onset date of disability. Tr. 80-81. The ALJ found that Plaintiff has the following severe combination of impairments: degenerative disc disease, fibromyalgia, chronic pain disorder, obesity, and affective disorder. Tr. 48-53. The ALJ determined that these impairments are not severe enough

---

[1] RFC is the most a claimant can do in light of the limitations caused by her impairments. *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. § 416.927(a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

to meet or equal a listed impairment. Tr. 53-54. The ALJ concluded that while Plaintiff is not able to perform her past work (Tr. 60-62), she is not disabled because she has the RFC to perform sedentary work (Tr. 54) which works exists in substantial numbers in the national economy (Tr. 60-62).

Plaintiff argues that the ALJ erred by discounting Plaintiff's testimony (Doc. 17 at 9-17), by failing to properly weigh medical source opinion evidence (*id*. at 17-23), by discounting third party evidence (*id.* at 23-24), and by relying upon inaccurate and unreliable vocational expert testimony (*id.* at 24-26). Defendant contends the decision is supported by substantial evidence and free from legal error. Doc. 18 at 9.

### A. Plaintiff's Testimony.

Plaintiff testified that on November 5, 2003, her alleged onset date, she suffered from back pain, seasonal depression, and aches and pains of her entire body. Tr. 80-82. Plaintiff stated that on November 5, 2003, she could walk for approximately 30 minutes, stand for approximately 45-60 minutes, and sit for approximately 60-90 minutes before pain or fatigue would force her to stop. Tr. 83-84. She stated that 20 pounds was the most she could lift and carry with her right or left arm. Tr. 84.

Plaintiff testified that her health, and specifically her back pain and depression, has worsened from her alleged onset date. Tr. 88. Plaintiff stated that she has been informed by doctors that she is not a candidate for back surgery because her pain is not severe enough. Tr. 88-89. Since 2009, Plaintiff stated that she has seen physicians' assistant ("P.A.") Robert S. Dawson about twice a month for a Teradol pain shot injection in her back. Tr. 90. As of the date of the hearing, Plaintiff testified that she could walk for approximately 20 minutes, stand for approximately 20-25 minutes, and sit for approximately 15-45 minutes before she would have to stop. Tr. 84-86. Plaintiff stated that she could carry 5-10 pounds with both arms, but that she could not bend and lift any weight off the ground, although she could lift a 5-10 pound object from table height. Tr. 86-87.

Plaintiff testified that she last worked in security for a county courthouse. Tr. 97.

1   She stated that she was fired because she would cry at work due to her depression and ask
2   to leave early in order to lie down due to her back pain. Tr. 97-100. Plaintiff stated that
3   at the time she was fired in November 2003, she would need to lie down for
4   approximately 90 minutes. Tr. 100. Plaintiff testified that she still needs to lie down
5   during the day because of her back pain. Tr. 100. Plaintiff stated that on average she
6   needs to lie down five times a day for approximately 20-30 minutes. Tr. 101.

7   Plaintiff testified that she has lost approximately 17 pounds because of changes
8   made to her diet. Tr. 102. Plaintiff testified that she does not exercise and has not done
9   any regular exercise since her alleged onset date. *Id.*

10   Plaintiff testified that she last saw Dr. Monica Taylor-Desir, a psychiatrist, in
11   November 2005, and that she then began seeing Lezlie Duckett, a registered nurse
12   practitioner ("R.N.P."). Tr. 93-94. Plaintiff testified that the last time she saw Duckett
13   was in September or October of 2009 and that she has not seen a doctor or nurse since
14   then. Tr. 95.

15   The ALJ found that Plaintiff's statements concerning the intensity, persistence,
16   and limiting effects of her symptoms were not credible to the extent they are inconsistent
17   with the RFC assessment. In reaching this conclusion, the ALJ evaluated Plaintiff's
18   testimony using the two-step analysis established by the Ninth Circuit. *See Smolen v.*
19   *Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Applying the test of *Cotton v. Bowen*, 799
20   F.2d 1403 (9th Cir. 1986), the ALJ first determined that Plaintiff's impairments could
21   reasonably produce the symptoms alleged. Tr. 56. Given this conclusion, and because
22   there is no evidence of malingering,[2] the ALJ was required to present "specific, clear and
23   convincing reasons" for finding Plaintiff not entirely credible. *Smolen*, 80 F.3d at 1281.
24   This clear and convincing standard "is the most demanding required in Social Security
25   cases." *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

---

27   [2] The Commissioner contends that the "clear and convincing" standard should not apply in part because there was evidence of malingering. Doc. 18 at 11, n. 11. While the record may have supported the ALJ making such a finding, the ALJ did not.

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A)); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

Additionally, although "[a]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony, . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of the pain." *Light*, 119 F.3d at 792 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir.2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester,* 81 F.3d at 834). In weighing a claimant's credibility, the ALJ may consider some of the following factors: claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between her testimony and her conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, and the compatibility of claimant's testimony with the medical evidence. *Thomas*, 278 F.3d at 958-59.

In this case, the ALJ rejected Plaintiff's testimony on four grounds. First, the ALJ found that Plaintiff's pain and other symptom allegations "exceed the limitations reasonably expected from the medical findings," (Tr. 56), and noted the following objective evidence as support for his finding: (1) spinal imaging and clinical findings are generally described as "mild," "minimal," and "small"; (2) a February 2006 MRI of the thoracic spine showed mild disc degeneration in the lower thoracic spine with no

- 5 -

evidence of disc herniation; (3) a MRI of the lumbar spine showed disc space narrowing and disc degeneration at the L2-3, L4-5 and L5-S1 levels; (4) mild central narrowing was seen at L2-3; (4) no neural foraminal compromise was identified; (5) small central disc herniation was seen at L5-S1 causing no significant central stenosis or neural foraminal compromise; (6) facet degenerative changes at L4-5 and L5-S1 bilaterally; and (7) Physician's Assistant Robert S. Dawson noted in February 2010 that x-rays of the spine showed "mild degenerative changes throughout." Tr. 56.

Second, the ALJ noted that the objective evidence did not show that Plaintiff suffered two common side effects of prolonged and/or chronic pervasive pain: weight loss and diffuse atrophy or muscle-wasting. Tr. 56. The record did show that Plaintiff lost about 17 pounds from her alleged onset date, but the ALJ found that this was not a significant amount of weight loss, particularly given Plaintiff's statement that this weight loss was due to diet changes. *Id.*; Tr. 102. The ALJ noted that there was no evidence in the record regarding diffuse atrophy or muscle-wasting. T.R. 56. From this the ALJ inferred that "although [Plaintiff] undoubtedly experiences some degree of pain, that pain has apparently not altered the use of muscles and joints to the extent that it has resulted in diffuse atrophy or muscle-wasting." *Id.*

Third, the ALJ noted Plaintiff's testimony that she is able to handle daily activities that are inconsistent with her complaints of disabling symptoms and limitations. Tr. 56. These activities include handling her personal care, preparing simple meals, taking care of others and pets, handling personal finances, shopping in stores and by computer, driving, visiting with friends, watching television, walking, reading, participating in yoga sessions, and attending school for approximately four months. Tr. 56-57. The ALJ further noted that "the physical and mental requirements of these household tasks and social interaction are consistent with a significant degree of overall functioning." Tr. 57.

Fourth, the ALJ found that Plaintiff was non-compliant with a prescribed course of treatment. Tr. 57. The ALJ noted that in March 2005, Melanie Dunham, family nurse practitioner ("F.N.P."), addressed Plaintiff's fibromyalgia diagnosis by suggesting that

exercise and activities of daily living were strongly encouraged but needed to start slowly and gradually increase with time. *Id.* The ALJ found, however, that Plaintiff had not undertaken regular exercise from her alleged onset date to the date of the hearing. *Id.* The ALJ concluded that Plaintiff was "less than credible with respect to the extent to which her impairments preclude the performance of work-related activities, especially when she has failed to follow the [] recommendations." *Id.*

Plaintiff argues that the ALJ improperly rejected her subjective symptom testimony due to a lack of supporting evidence. Doc. 17 at 7. Plaintiff notes that "fibromyalgia is not expected to result in the abnormal objective data sought by the ALJ herein" and cites to SSR 12-2P, 2012 WL 3104869 (July 25, 2010), *Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 817-19 (6th Cir. 1988) (referring to fibromyalgia as "fibrositis"), and *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (ALJ misunderstood fibromyalgia and the disease's symptoms) for support. Doc. 17 at 7-8. Moreover Plaintiff contends that fibromyalgia pain cannot be objectively quantified and that she need not do so to establish disability. *Id.* at 11.

SSR 12-2P provides that once a person is determined to have fibromyalgia her statements about symptoms and functional limitations are to be evaluated according to the two-step process set forth in SSR 96-7P. These policies provide that "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all other evidence in the case record." SSR 12-2P, 2012 WL 3104869 at *5. Here, the ALJ's finding was based in part on a lack of objective medical evidence – that Plaintiff had mild, minimal, or small disc degeneration, narrowing, or herniation in her back. Tr. 56; *see Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1161 (9th Cir.2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted); *Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir.2004) (lack of objective medical evidence supporting claimant's allegations supported ALJ's finding that claimant was not credible). But the ALJ did not stop there.

As noted above, he also found that Plaintiff's daily activities were not consistent with her alleged level of symptoms, that she did not show the weight loss and muscle compromise associated with the levels of pain she alleged, and that she did not comply with exercise recommendations made for treatment of her fibromyalgia. The Court concludes that the ALJ's conclusion is consistent with SSR 12-2P and SSR 96-7P and was not erroneous.

Plaintiff also raises specific objections to the ALJ's credibility determinations based on Plaintiff's daily activities and alleged non-compliance with medical recommendations. Doc. 17 at 12-15. As to Plaintiff's daily activities, the Court finds that the ALJ "properly considered Plaintiff's daily activities in finding [her] testimony incredible." *Curry v. Astrue*, No. 09-CV-2580-PHX-GMS, 2010 WL 3789535, at *6 (D. Ariz. Sept. 22, 2010); *see Thomas*, 278 F.3d at 958-59 (the ALJ did not err in rejecting the claimant's pain testimony where the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"). "Although evidence of [the claimant's] daily activities may also admit of an interpretation more favorable to [the claimant], the ALJ's interpretation was rational, and we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (quotation marks and citations omitted) (ALJ found claimant "able to care for her own personal needs, cook, clean and ship" and concluded that these activities "suggest she is quote functional.").

Plaintiff argues that the ALJ erred in discrediting her testimony due to her non-compliance with medical advice. Doc. 17 at 13. Plaintiff contends that she followed "doctor advice to exercise, but same was no longer beneficial and therefore she did not continue to exercise 'regularly.'" *Id.* Plaintiff points to evidence in the record that she followed advice to exercise during her alleged disability period, but when asked at the hearing if she had "done any regular exercise whatsoever" between November of 2003 and the present, she testified she does not do regular exercise. Tr. 102. Given this direct evidence, the ALJ did not err in discrediting Plaintiff's testimony due to her failure to follow a course of treatment prescribed in 2005.

The Court concludes that substantial evidence supports the ALJ's credibility determination, and that the ALJ provided clear and convincing reasons for discounting Plaintiff's credibility.

### B. Medical Source Opinions.

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); 20 C.F.R. § 404.1527(b); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); 20 C.F.R. § 416.927(d)(1), (2). A treating physician's opinion is not necessarily conclusive of a physical impairment or the ultimate issue of disability, however, and an ALJ need not accept such an opinion if it is brief, conclusory, and unsupported by clinical findings. *See Thomas*, 278 F.3d at 956-57 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

Where the treating physician's opinion is credible and uncontroverted, the ALJ must provide clear and convincing reasons for rejecting it. *Id.*; *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999). Even if a treating physician's opinion is controverted by a non-treating physician's opinion, the ALJ must make findings setting forth "'specific, legitimate reasons' supported by substantial evidence in the record" for rejecting it. *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see Thomas*, 278 F.3d at 957. "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). One specific, legitimate reason is where the treating physician's opinion is premised on the claimant's subjective complaints, which the ALJ had already properly discounted. *See Fair v.*

1  *Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).  Where the treating physician's opinion is
2  controverted by a non-treating physician's opinion based on independent clinical
3  findings, the non-treating physician's opinion itself may be substantial evidence.  *See*
4  *Thomas*, 278 F.3d at 957 (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600
5  (9th Cir. 1999)).  "'When there is conflicting medical evidence, the [ALJ] must determine
6  credibility and resolve the conflict.'"  *Id.* (quoting *Matney*, 981 F.2d at 1019); *see also*
7  *Andrews*, 53 F.3d at 1041 (citing *Magallanes*, 881 F.2d at 751).

Opinions of examining or consulting physicians alone may constitute substantial evidence supporting the ALJ's decision when they are consistent with other evidence in the record.  *See Magallanes*, 881 F.2d at 752 ("[T]he reports of consultative physicians . . . may serve as substantial evidence."); *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); *see also* 20 C.F.R. § 404.1527(e) (stating that the opinions of non-examining physicians constitute medical evidence).

Physicians' assistants and nurse practitioners are considered "other sources," 20 C.F.R. § 404.1513(d)(1), and although not "acceptable medical sources," 20 C.F.R. § 404.1513(a), an ALJ must take into account other source opinion evidence unless he or she expressly determines to disregard it and provides germane reasons for doing so.  *Cole v. Astrue*, 395 Fed. Appx. 387, 389 (9th Cir. 2010); *see also Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

### 1. Melanie Dunham, F.N.P.

Melanie Dunham, F.N.P., stated in a letter dated March 7, 2005, that "exercise and activities of daily living were strongly encouraged, but need to start slowly and gradually increase such activities with time."  Tr. 487.  At the time, Dunham also indicated that Plaintiff "may need to start working gradually, less than 12 hours per work," but that "[a]fter a period of time hopefully this number can increase."  *Id.*  In a letter dated May 16, 2006, Dunham noted that Plaintiff experienced chronic pain and extreme

- 10 -

fatigue, and opined that "an ideal work setting for [Plaintiff] would be one that is flexible and not at all strenuous. A part time job with no expectations of lifting anything greater than 5-10 pounds would be a reasonable employment arrangement." Tr. 466. In a letter dated July 12, 2006, Dunham again noted that Plaintiff "has a chronic condition that limits her ability to work at full capacity or forty hours a week." Tr. 461. At that time, Dunham indicated that "[a] part-time, flexible position would be more appropriate [for Plaintiff]." *Id.* The ALJ gave these opinions limited weight because "they are conclusory and are not adequately supported by clinical signs and laboratory findings in the contemporaneous treatment notes." Tr. 58. The ALJ also noted that as a nurse practitioner, Dunham was not an "acceptable medical source," and that she had opined that Plaintiff was capable of working, albeit with restrictions. *Id.* Plaintiff does not appear to object to the weight the ALJ afforded Dunham's opinion.

### 2. Robert S. Dawson, P.A.

Robert S. Dawson, P.A., saw Plaintiff six times from January through May 2010. Tr. 776-94. During this treatment period, Dawson noted impairments and diagnoses of nausea, vomiting, inability to take medications, possible upper gastrointestinal dysmotility which significantly worsens fibromyalgia, depression, hypothyroidism, irritable bowel syndrome, and non-inflammatory gastroesophageal reflux disease. *Id.* On February 4, 2010, Dawson noted that x-rays of Plaintiff's spine showed "[m]ild [d]egenerative changes throughout." Tr. 778. On March 30, 2010, Dawson opined that Plaintiff was unable to work eight hours a day, five days a week on a regular and consistent basis. Tr. 872. Specifically, Dawson opined that Plaintiff would be limited to less than two hours per day of sitting, standing or walking, and that she could not lift or carry more than 15 pounds. *Id.* His assessment noted that at the time Plaintiff was "not able to take medications," which "significantly worsens [her diagnoses]." *Id.* The ALJ gave Dawson's opinion "limited weight" because it is inconsistent with the "sparse contemporaneous treatment records, which provided very limited clinical findings and basically list [Plaintiff]'s subjective complaints and past medical assessments." Tr. 58.

1  The ALJ also noted that Dawson, a physician's assistant, is not an "acceptable medical source." *Id.*

Plaintiff argues that the ALJ erred in not considering the factors set forth in SSR 06-03p for evaluating the opinion of a non-acceptable medical source. Doc. 17 at 22. Plaintiff also submits that limiting the weight afforded Dawson's opinion because of the "limited clinical findings" is an improper rational regarding the effect of fibromyalgia pain. *Id.* Defendant responds that the ALJ reasonably discounted Dawson's opinions because Dawson treated Plaintiff at a time when her symptoms were at their very worst, and thus Dawson could not provide a "detailed, longitudinal picture" of Plaintiff's impairments pursuant to 20 C.F.R. § 404.1527(c)(2). Doc. 18 at 17.

As noted above, an ALJ need only provide germane reasons for discounting "other source" opinion evidence. The Court concludes that the ALJ's weighing of Dawson's opinion, in which he identified sparse treatment records, limited clinical findings, and reliance on Plaintiff's subjective complaints as problematic (Tr. 58), satisfies this modest standard.

### 3. Dr. Robert Barker.

On January 29, 2008, Dr. Robert Barker, state agency medical examiner, examined Plaintiff. Tr. 51518-24. He concluded that Plaintiff "has a normal physical examination except for being overweight" (Tr. 520), and opined that Plaintiff's obesity diagnosis did not constitute a condition that would impose any limitations on Plaintiff for 12 continuous months (Tr. 521).

The ALJ gave this opinion "limited weight as previous examinations have demonstrated limitations of back range or motion and tender points." Tr. 58. Plaintiff argues the ALJ found some limitations in Plaintiff's RFC (Tr. 54) and thus the ALJ actually rejected Dr. Barker's opinion (Doc. 17 at 22-23). The Court concludes that any error in how the ALJ weighed Dr. Barker's opinion is harmless because the ALJ imposed more limitations in Plaintiff's RFC than Dr. Barker recommended, and these additional limitations benefit Plaintiff. *Tommasetti*, 533 F.3d at 1038 ("the court will not reverse an

- 12 -

1 ALJ's decision for harmless error, which exists when it is clear from the record that the
2 ALJ's error was inconsequential to the ultimate nondisability determination." (quotation
3 marks and citations omitted)).

### 4. Dr. Ernest Griffith.

Dr. Ernest Griffith, a state agency medical consultant, opined that Plaintiff could stand, walk, or sit for six hours in an eight-hour workday and lift and carry 5-10 pounds. Tr. 525-32. The ALJ gave this opinion significant weight because it was consistent with the evidence overall. Tr. 58. Plaintiff objects to the weight afforded this opinion, arguing that Dr. Griffith's assessment does not reflect an examination or review of actual treatment notes and rather relies on reports rejected by the ALJ. Doc. 17 at 23.

Although the ALJ gave "substantial" weight to the opinion of Dr. Griffith (Tr. 58), this constitutes legal error only if his opinion is not consistent with independent clinical findings or other evidence in the record. *See Thomas*, 278 F.3d at 957. Dr. Griffith's opinion is consistent with other evidence in the record (Tr. 56-59), but it is also at odds with the other source treating opinion of Dawson (Tr. 872). The Court found previously that the ALJ stated germane reasons for discounting Dawson's opinion, and thus the ALJ did not err in giving substantial weight to Dr. Griffith's opinion when other evidence in the record supported it. *See Morgan*, 169 F.3d at 600 ("Opinions of nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."). Further, any error in the ALJ's weighing of Dr. Griffith's opinion is harmless because the ALJ imposed a sedentary RFC and thus imposed greater limitations on Plaintiff's RFC than recommended by Dr. Griffith. *See Tommasetti*, 533 F.3d at 1038.

### 5. Lezlie Duckett, R.N.P.

Lezlie Duckett opined in November 2008 that Plaintiff had several psychiatric limitations and restrictions, including that she was severely limited in her ability to relate to other people; to understand, carry out and remember instructions; to respond appropriately to supervisors, co-workers and customary work pressures; to perform

complex tasks; and to perform varied tasks. Tr. 734-35. Duckett indicated that the level of severity existed as of August 2003. Tr. 735. The ALJ gave this assessment "limited weight" because "although [Duckett] acknowledges and has considered [Plaintiff]'s treatment history[,] . . . the contemporaneous treatment notes do not support such a restrictive assessment." Tr. 58-59. The ALJ noted Plaintiff's long treatment history, but concluded that Plaintiff's depression and anxiety "appeared to be well controlled by medication for significant periods of time." Tr. 59. The ALJ supported this conclusion by Dr. Taylor Desir's August 2007 notes indicating that Plaintiff had limited medication adjustments (Tr. 638), from which the ALJ concluded that Plaintiff's treatment was effective (Tr. 59).

Plaintiff argues that the ALJ erred in limiting the weight afforded to Duckett's opinion and submits that the treatment notes are actually consistent with disability. Doc. 17 at 20-22. Defendant argues the ALJ did not err in limiting the weight given to Duckett's opinion because the more recent records showed the symptoms as moderate (Tr. 769-72), which is inconsistent with Duckett's opinion (Doc. 18 at 19). The Court will not consider Defendant's "*post hoc* rationalizations that attempt to intuit what the ALJ may have been thinking," *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009), but the Court nonetheless finds that the ALJ stated germane reasons for discrediting Duckett's "other source" opinion.

### 6.     Dr. Patricia Rose, Ed.D.

Dr. Patricia Rose, doctor of education ("Ed.D"), a board certified state consultative psychological examiner, opined that Plaintiff has the understanding and intellect to work because she did so in the past. Tr. 493, 496. Dr. Rose further opined that Plaintiff would have difficulty completing work tasks. Tr. 493, 498. Dr. Rose concluded that Plaintiff would need work adjustment assistance before being able to maintain work (Tr. 498), and that Plaintiff could possibly work on a part-time basis (Tr. 497). The ALJ gave Dr. Rose's opinion "some weight" because he found it "based on a thorough examination and . . . consistent with the objective evidence." Tr. 59.

- 14 -

Plaintiff argues that the ALJ did not afford Dr. Rose's opinion any weight, and in fact disregarded the opinion, because Dr. Rose's opinion supports a finding of disability since under SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996), the inability to complete a full time work schedule constitutes a disability. Doc. 17 at 18. Defendant argues that the ALJ gave Dr. Rose's opinion some weight because he did not accept Dr. Rose's recommendation that Plaintiff return to work initially on a part-time basis (Doc. 18 at 20), and that this conclusion was reasonable and supported by substantial evidence (*id.*). The ALJ did not "pick and choose" from Dr. Rose's opinion as Plaintiff claims. Rather, the ALJ gave the state consultant's opinion weight where it was "consistent with the objective evidence." Tr. 59. This does not constitute legal error.

### 7. Dr. David Yandell, Ph.D.

Dr. David Yandell, a state agency psychological consultant, reviewed Plaintiff's medical records and completed a mental RFC assessment in January 2008. Tr. 500-517. Dr. Yandell opined that Plaintiff "retains the capacity to perform simple and probably some detailed job tasks on a sustained basis." Tr. 502. The ALJ gave "substantial weight" to this opinion because "it is consistent with the overall evidence." Tr. 58.

Plaintiff argues Dr. Yandell's opinion is entitled to the least amount of weight (Doc. 17 at 19), and that it is unclear why his opinion is given more weight than Dr. Rose's opinions, especially when Dr. Yandell appears to have relied only on the report of Dr. Rose (Tr. 502, 516). Defendant argues that the medical opinion of Dr. Yandell is still entitled to great weight even though it is not based on an independent examination (Doc. 18 at 18), and that any error in the weight given the opinion is harmless because the ALJ imposed more limitations on Plaintiff's RFC than recommended by Dr. Yandell (*id.*). The Court agrees with Defendant. *See Tommasetti*, 533 F.3d at 1038.

### 8. Dr. Steven Patrick, Ph.D.

Dr. Steven Patrick, consultative psychological examiner, examined Plaintiff in August 2008 (Tr. 710) and opined that Plaintiff's "current mental health [is] unlikely to prevent [her] from sustaining gainful employment for the next 12 + months" (Tr. 713,

715). Dr. Patrick opined that Plaintiff "exhibits no impairment in cognitive and memory functioning" (Tr. 715), that she "appears to get along adequately with others" (*id.*), and that she "is able to communicate" (*id.*). Dr. Patrick also opined that Plaintiff's "attention is evaluated as fair and her concentration is poor to fair." Tr. 713.

The ALJ noted that he gave some weight to Dr. Patrick's opinion "to the extent it is consistent with the residual capacity assessment." Tr. 59. Plaintiff contends that this statement is meaningless (Doc. 17 at 18-19), and that the ALJ rejected Dr. Patrick's assessment in finding that Plaintiff has "moderate difficulties" with concentration and that she has difficulty in interacting with people (Tr. 54). On the other hand, Plaintiff also argues the ALJ failed to explain why he rejected most of Dr. Patrick's opinions when he found Plaintiff to be more restricted than Dr. Patrick opined (Doc. 17 at 19), and that the ALJ failed to explain why Dr. Patrick's opinion is entitled to "some weight" when he is not a treating physician (*id.*). Defendant argues that any error in how the ALJ evaluated Dr. Patrick's opinion is harmless because the ALJ concluded that Plaintiff's RFC was more limited than Dr. Patrick's assessment. Doc. 18 at 21. The Court agrees and finds that the ALJ's weighing of Dr. Patrick's opinion does not constitute legal error.

### C.     Lay Witness Testimony.

Plaintiff argues that the ALJ failed to consider the report of Christina Barton, Plaintiff's cousin-in-law. Tr. 17 at 23. The ALJ found that Ms. Barton's report "basically corroborated" Plaintiff's symptoms and daily activities. Tr. 55. Plaintiff contends that the ALJ implicitly discredited Ms. Barton's report without having provided germane reasons for doing so. Doc. 17 at 34. Defendant argues that the ALJ's error in not giving individualized reasons for rejecting Ms. Barton's report constitutes harmless error. Doc. 18 at 15 (citing *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to

be prejudicial per se.")).

To discount competent lay witness testimony, "the ALJ must give reasons that are germane to each witness." *Molina*, 674 F.3d at 1114 (quotation marks and citations omitted). But if the ALJ "gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* Having found that the ALJ did not err in discrediting Plaintiff's testimony, the Court finds that the ALJ's discounting of Ms. Barton's report – that "basically corroborated" Plaintiff's testimony – does not constitute legal error. *Id.* at 1117.

### D. Vocational Expert Testimony.

At step five, the Commissioner has the burden of demonstrating that the claimant can perform some work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. *Tackett,* 180 F.3d at 1100; 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). The Commissioner may satisfy that burden either through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2. *Tackett*, 180 F.3d at 1100-01; *see also Hill v. Astrue,* 638 F.3d 1144, 1152 (9th Cir. 2012) ("The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record."). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala,* 10 F.3d 678, 681 (9th Cir. 1993).

At the hearing, the ALJ asked vocational expert Tracy Young whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. Tr. 104-07. The vocational expert responded that that there are jobs that exist in the national economy for such a hypothetical person, and gave examples of hand packager, job number 559.687-014 in the Dictionary of Occupational Titles ("DOT");

1  production worker, job number 713.687-018 in the DOT; and inspector, job number
2  716.687-030 in the DOT. Tr. 108-09. The vocational expert further testified that 21,640
3  hand packer jobs exist in the national economy and approximately 340 in the Arizona
4  economy, that 28,290 production worker jobs exist in the national economy and 275 in
5  the Arizona economy, and that 13,200 inspector jobs exist in the national economy and
6  220 in the Arizona economy. *Id.* The Occupational Employment Quarterly ("OEQ"), the
7  source relied on by the vocational expert to provide the numbers of jobs that exist in the
8  national and regional economies, aggregates jobs with similar limitations to show the
9  numbers that exist in the respective economies. Tr. 124-29. The ALJ accepted the
10 vocational expert's testimony and determined that "[Plaintiff] is capable of making a
11 successful adjustment to other work that exits in significant numbers in the national
12 economy." Tr. 62.
13      Plaintiff argues that the vocational expert's testimony regarding job numbers was
14 unreliable because the OEQ's job groupings include jobs that exceed Plaintiff's
15 limitations. Doc. 17 at 25. Plaintiff raised similar arguments before the ALJ, but the ALJ
16 determined that the OEQ was a reliable source and accepted the vocational expert's
17 testimony. Tr. 61-62. The ALJ determined that "the vocational expert's testimony is
18 consistent with the information contained in the Dictionary of Occupational Titles." T.R.
19 61. Because the vocational expert's testimony comports with the DOT, the Court cannot
20 find that the ALJ's acceptance of the vocational expert's testimony constitutes legal error.
21 *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (holding that where a conflict
22 exists between DOT and vocational expert testimony, "the ALJ must then determine
23 whether the vocational expert's explanation for the conflict is reasonable and whether a
24 basis exists for relying on the expert rather than the Dictionary of Occupational Titles.").
25      Plaintiff also argues that the vocational expert did not provide numbers for a
26 region of Arizona, and instead provided numbers for the entire State. Doc. 17 at 26. The
27 Court finds, however, that even if the numbers provided by the vocational expert for the
28 Arizona economy do not demonstrate that a significant number of jobs were available in

the regional economy, the numbers provided for the national economy do indicate the existence of a significant number of jobs.  *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012) ("If we find *either* of the two numbers [for jobs available in the national economy or in the regional economy] "significant," then we must uphold the ALJ's decision." (emphasis in original)).  The ALJ's decision at step five is supported by substantial evidence and his reliance on the vocational expert's testimony does not constitute legal error.

**IT IS ORDERED:**

1. Defendant's administrative decision is **affirmed**.

2. The Clerk is directed to enter judgment accordingly and terminate this matter.

Dated this 25th day of January, 2013.

_____
David G. Campbell
United States District Judge